[No. E051772. Fourth Dist., Div. Two. Apr. 24, 2012.]

DONNA JEAN KNOX, as Conservator, etc., et al., Plaintiff,
Cross-defendant and Appellant, v.
LAWRENCE A. DEAN II, Defendant, Cross-complainant and Respondent.

COUNSEL

Law Office of George F. Dickerman and George F. Dickerman for Plaintiff, Cross-defendant and Appellant.

Borden Law Office, Alex R. Borden and Priya Bahl for Defendant, Cross-complainant and Respondent.

OPINION

**HOLLENHORST, J.—**

## I. INTRODUCTION

Plaintiff, cross-defendant, and appellant Donna Jean Knox, individually and as successor conservator and guardian ad litem for Blaine H. Knox,[1] appeals from judgment in favor of defendant, cross-complainant, and respondent Lawrence A. Dean II, Blaine's former conservator, on Donna's complaint for damages under the Elder Abuse and Dependent Adult Civil

---

[1] Because they share a last name, we will refer to Donna and Blaine herein by their first names for the sake of clarity and convenience, and not intending any disrespect.

Protection Act (the Act) (Welf. & Inst. Code, § 15600 et seq.) and default judgment in favor of Dean on his cross-complaint.[2] Donna contends the trial court erred in failing to apply protections under the Act that supersede Probate Code section 2103, subdivision (b), and in failing to allow a challenge to prior probate accounting orders. Donna also contends (1) the trial court erred in failing to transfer the case to the probate court, (2) triable issues of material fact existed that should have precluded summary judgment, and (3) the trial court erred in its evidentiary rulings.

Dean argues that (1) Donna's claims for acts up to April 30, 2006, are barred by res judicata under Probate Code section 2103, subdivision (b), based on final orders settling conservatorship accounts and reports, and (2) Donna has failed to allege facts sufficient to state a cause of action against Dean for the entire period during which he served as conservator. We conclude that Dean's res judicata defense applies only to acts before May 1, 2006, and that Donna's allegations were sufficient to state causes of action against him. Because Dean failed to establish a complete defense as to certain causes of action, summary judgment was improper, although summary adjudication may be entered as to the causes of action for fraud and constructive fraud.

In addition, Dean has filed a motion for imposition of sanctions against Donna and her attorney on the ground that the appeal is frivolous. We deny the motion.

## II. FACTS AND PROCEDURAL BACKGROUND

Donna is the daughter and successor conservator of Blaine, who was 94 years old in 2007. On April 7, 2003, Dean was issued temporary letters as conservator of Blaine's person and estate, and general letters were issued on May 30, 2003. Dean resigned as conservator on January 4, 2007.

The principal assets of Blaine's estate consist of two apartment buildings in Redlands and a collection of classic cars and antique engines. At the beginning of the conservatorship the value of Blaine's assets totaled approximately $1.5 million, including approximately $295,000 in cash.

On August 11, 2004, Dean submitted a first accounting, seeking confirmation of his acts and transactions during the period of April 6, 2003, through April 5, 2004. Dean mailed a notice of the hearing on the accounting to

---

[2] Although Donna states her appeal is from default judgment in favor of Dean on his cross-complaint, the cross-complaint is not part of the record on appeal, and Donna does not raise any specific argument relating to the cross-complaint.

Donna. Donna did not file any objection to the first accounting. The probate court approved the first accounting on September 17, 2004.

Dean filed a second accounting on July 21, 2005, covering the period of April 6, 2004, through April 30, 2005. Dean mailed a notice of the hearing to Donna. Donna did not file any objection to the second accounting. The probate court approved the second accounting on August 26, 2005.

Dean filed a third accounting on November 8, 2006, covering the period of May 1, 2005, through April 30, 2006. Donna filed an objection to the third accounting, and the probate court approved it on January 4, 2007, over her objection after examining the bills and statements associated with the third accounting.

Dean filed a fourth accounting on February 23, 2007, covering the period of May 1, 2006, through December 26, 2006. Donna filed written objections on April 5, 2007. The probate court stayed proceedings on the fourth accounting until the current case was finalized.

On August 6, 2007, Donna filed a complaint against Dean alleging causes of action for elder financial abuse (Welf. & Inst. Code, § 15610.23 et seq.), elder physical neglect (Welf. & Inst. Code, § 15610.57 et seq.), breach of fiduciary duty, fraud, and constructive fraud. Donna alleged that, while acting as conservator, Dean engaged in financial self-dealing, neglected Blaine's physical needs, and created phantom services provided by Dean's employees that drained Blaine's estate of all cash. Although the probate court approved Dean's first three accountings, Donna alleged that Dean had omitted material facts from those accountings, including his personal relationships with individuals he hired; that he made payments for services that were never provided to Blaine; and that he committed waste and churned Blaine's estate for his own benefit. She also alleged that Blaine suffers from vision and hearing impairments that made him susceptible to undue influence and prevented him from effectively protecting his rights.

Dean filed a motion for summary judgment or summary adjudication. He contended the probate court orders approving the first three accountings were res judicata as to matters encompassed in those accountings. He argued that Donna had an opportunity to object to the accountings in the probate court, but she failed to object to the first and second accountings, and the probate court approved the third accounting over her objections. He further argued that Donna had failed to allege facts sufficient to support her causes of action. Donna filed an opposition to the motion.

Meanwhile, on May 1, 2009, the probate court terminated the conservatorship of Blaine's person but continued the conservatorship of his estate. At some point it appears that Donna was appointed Blaine's guardian ad litem.

Following oral argument, the trial court granted Dean's motion for summary judgment. Judgment was thereafter entered in favor of Dean.

## III. DISCUSSION

### A. *Standard of Review*

We review de novo the trial court's determination of a motion for summary judgment. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].) "We apply the same three-step analysis required of the trial court. We begin by identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citation.]" (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].)

### B. *Elder Financial Abuse*

#### 1. *Issue Framed by Pleadings*

Donna alleged Dean committed elder financial abuse under Welfare and Institutions Code section 15610.30 by, among other things, failing to take reasonable steps to repair Blaine's apartments, allowing the apartments to deteriorate, and allowing an in-home caregiver to reside rent free in one of Blaine's apartments.

Welfare and Institutions Code section 15610.30, subdivision (a), provides:

"(a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following:

"(1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

"(2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

"(3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 1575 of the Civil Code."

Dean argues that Donna failed to allege that he "took" any property from Blaine's estate within the meaning of Welfare and Institutions Code section 15610.30, and she therefore failed to plead a cause of action. However, Donna alleged that Dean allowed a caregiver to live rent free in one of Blaine's apartments, allowed two of his friends to rent Blaine's apartments at below-market rents, acquiesced in improper billing from a caregiving agency, overcharged Blaine's estate for conservator services that were never performed or were unnecessary, and conspired to provide unnecessary caregiving services. Those allegations, if proved, would be sufficient to establish a cause of action under Welfare and Institutions Code section 15610.30, subdivision (b). We therefore conclude that Donna properly pleaded a cause of action for elder financial abuse.

## 2. Dean's Showing in Motion for Summary Judgment

Dean argues the probate court orders approving his first three accountings were res judicata under Probate Code section 2103, and his acts and transactions during the periods covered by those accountings are not subject to further examination. The trial court granted summary judgment on that basis.

Probate Code section 2103 provides:

"(a) When a judgment or order made pursuant to this division becomes final, it releases the guardian or conservator and the sureties from all claims of the ward or conservatee and of any persons affected thereby based upon any act or omission directly authorized, approved, or confirmed in the judgment or order. For the purposes of this section, 'order' includes an order settling an account of the guardian or conservator, whether an intermediate or final account.

"(b) This section does not apply where the judgment or order is obtained by fraud or conspiracy or by misrepresentation contained in the petition or account or in the judgment or order as to any material fact. For the purposes of this subdivision, misrepresentation includes, but is not limited to, the omission of a material fact." (Prob. Code, § 2103, subds. (a), (b).)

 Thus, under Probate Code section 2103, subdivision (a), an order settling an accounting in a conservatorship proceeding has res judicata effect (*Conservatorship of Berry* (1989) 210 Cal.App.3d 706, 728 [258 Cal.Rptr. 655]) unless an exception under Probate Code section 2103, subdivision (b) is established.

### a. *Does the Act supersede Probate Code section 2103?*

Donna contends the Act provides protections that supersede Probate Code section 2103, and consequently, the trial court erred in failing to allow her to challenge prior probate accounting orders.

Legislative history indicates the Act was intended to provide protections to a disadvantaged and vulnerable class of people—elders and dependent adults. (See Welf. & Inst. Code, § 15600.) Our Supreme Court has held that the Act therefore supersedes limitations on a plaintiff's recovery in a medical malpractice action that would otherwise apply under the Medical Injury Compensation Reform Act (MICRA) (Civ. Code, § 3333.2) when a health care provider has acted with reckless neglect in caring for an elderly or dependent adult. (*Delaney v. Baker* (1999) 20 Cal.4th 23, 42 [82 Cal.Rptr.2d 610, 971 P.2d 986] (*Delaney*).) In so holding, the court in *Delaney* contrasted the purpose of MICRA—to limit the "rapidly rising costs of medical malpractice insurance in the 1970's"—with the purpose of the Act—"to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect." (*Delaney, supra*, at p. 33.)

In the current case, however, the purposes of the Act and of part 4 of division 4 of the Probate Code, establishing provisions common to guardianships and conservatorship, are similar—to protect vulnerable classes of persons. (Compare Prob. Code, § 1800 with Welf. & Inst. Code, § 15600.) Thus, the policy reasons that supported the court's holding in *Delaney* do not apply in the present context. We find no basis for concluding that Probate Code section 2103 should not apply in the context of elder abuse claims arising under the Act.

### b. *Requirement of extrinsic fraud*

■ Courts have held that the fraud referred to in Probate Code section 2103, subdivision (b) is extrinsic fraud—i.e., fraud in obtaining the order itself. (*Lazzarone v. Bank of America* (1986) 181 Cal.App.3d 581, 595–596 [226 Cal.Rptr. 855] (*Lazzarone*).) Extrinsic fraud occurs when " ' "the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practi[c]ed on him by his opponent," ' " or when "fiduciaries have concealed information they have a duty to disclose." (*Id.* at p. 596.) In *Lazzarone*, the court held that probate court orders approving the accountings of a trustee had res judicata effect. The plaintiff, the beneficiary of a trust, had sued a former trustee, alleging negligence and fraud, but had not alleged extrinsic fraud that would allow relitigating the issues of the trustee's management of the trust or the trustee's veracity in disclosures made in the accountings. (*Id.* at pp. 588–589; see also *Bank of America v. Superior Court*

(1986) 181 Cal.App.3d 705, 714 [226 Cal.Rptr. 685] [a bank's fraud in misrepresenting its skill and in investing guardianship funds poorly was not extrinsic fraud that would allow the beneficiary to reopen the issue].)

■ Donna argues that such cases were wrongly decided because the statute does not include the term "extrinsic fraud." Her argument is unpersuasive. The case law discussed above requiring extrinsic fraud predates the 1990 enactment of Probate Code section 2103. The Law Revision Commission comments to Probate Code section 2103 state that "[s]ubdivision (b) restates subdivision (b) of Section 2103 of the repealed Probate Code without substantive change." (Cal. Law Revision Com. com., Deering's Ann. Prob. Code (2004 ed.) foll. § 2103, p. 610.) " 'When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute. [Citation.]' [Citations.]" (*People v. Ledesma* (1997) 16 Cal.4th 90, 100–101 [65 Cal.Rptr.2d 610, 939 P.2d 1310].) ■ We therefore conclude the Legislature has concurred with case law that interprets Probate Code section 2103, subdivision (b) to require extrinsic fraud to create an exception to the preclusive effect of a probate court order.

### c. *Application of Probate Code section 2103 to Donna's complaint*

Donna points out that during the periods covered by the first and second accountings, Blaine was unrepresented by counsel, and, as a conservatee, he had been declared incompetent, and he had severe vision and hearing impairments that prevented him from reading the accountings and from requesting that counsel be appointed for him. Moreover, although Donna received notices of hearings on the first and second accountings, she was not a party to the action, she was living out of state, and she had no legal duty at the time to act on Blaine's behalf. Thus, she argues, res judicata should not apply.

In *Bank of America v. Superior Court*, the court held that the minor who challenged the bank's actions as the guardian of her estate had been given legal notice of the hearing on the accounting, and the order on the accounting was res judicata. (*Bank of America v. Superior Court, supra*, 181 Cal.App.3d at p. 715, fn. 8.) The court explained, "Bank was appointed guardian of [the minor's] *estate* only; [the minor's] mother has legal custody of her and Bank properly sent the mother notice of the hearing on the . . . accounting." (*Ibid.*) Donna argues that unlike the mother in that case, she had no legal duty to act on Blaine's behalf, and, moreover, Blaine had been declared incompetent, and his physical disabilities prevented him from discovering Dean's wrongful

conduct. The trial court recognized that Donna raised "an interesting point to address to the legislature because the legislature hasn't said much about that," as to the standing of a family member to later challenge an accounting when the conservatee is unrepresented by counsel and has disabilities that preclude effective notice. The trial court ruled, however, that because Donna had received notice and had actually participated in the proceedings concerning the third accounting, Probate Code section 2103 would preclude her challenge to the probate court's orders on the first three accountings.

We agree with the trial court's ruling. Donna received actual notice of the hearings on the first three accountings and in fact filed objections to the third accounting. Under Probate Code section 2103, the orders on the first three accountings are therefore final.

### d. *Showing of extrinsic fraud*

■ Donna also argues that she did show extrinsic fraud in the nature of failure to disclose by one who has a fiduciary duty to do so. In *Lazzarone*, the court stated that in addition to extrinsic fraud involving a trustee's efforts to keep the beneficiary away from the courtroom, "[a] second species of extrinsic fraud has also been found where fiduciaries have concealed information they have a duty to disclose. [Citations.] This variety of extrinsic fraud recognizes that, even if a potential objector is not kept away from the courthouse, the objector cannot be expected to object to matters not known because of concealment of information by a fiduciary." (*Lazzarone, supra*, 181 Cal.App.3d at pp. 596–597; see *Estate of Sanders* (1985) 40 Cal.3d 607, 615 [221 Cal.Rptr. 432, 710 P.2d 232].)

Donna contends Dean committed extrinsic fraud of that second species by failing, as a fiduciary, to disclose in his accountings: (1) "that he had pre-existing and/or personal relationships with the persons he hired and paid from Blaine's estate"; (2) "that he paid people who provided no services to Blaine or his estate"; (3) "that he knew Blaine didn't need a conservator over his person because he reviewed and paid for Dr. Timothy O'Neal's December 22, 2002 Capacity Declaration that stated that Blaine had no apparent impairment in any mental function [and d]espite this knowledge, Dean's accountings misrepresented to the court and potential objectors that [Blaine] did need a conservator"; (4) "that Dean intentionally failed to investigate whether ample care-giving services were already available free-of-charge . . ."; and (5) "Dean's accountings misrepresented to the court and potential objectors, by omitting the material fact that Dean committed waste by not renting Blaine's apartments and generating monthly income to Blaine's estate . . . ." (Some capitalization omitted.)

We will consider each of these contentions in turn.

### (1) *Dean's preexisting relationships*

Donna contends Dean committed extrinsic fraud by failing to disclose his preexisting or personal relationships with persons he hired and paid from Blaine's estate. In her opposition to Dean's motion for summary judgment, Donna stated that Dean misrepresented to the probate court that he did not hire any of his affiliates when he had hired Lance Riley, his housemate and co-owner of real property, as a property manager for Blaine's estate. Donna supported her assertion with a copy of an accounting Dean filed in another conservatorship identifying Riley as his housemate and a copy of a recorded grant deed showing Dean and Riley as co-owners of real property.

Donna has provided no legal authority for her assertion that Dean was required to identify a housemate as an affiliate. We conclude that Dean's failure to report that relationship was not extrinsic fraud.

### (2) *Paying persons who provided no services to Blaine's estate*

Dean represented in the first accounting that he had interviewed and hired one Girlie Kirbac (also identified in the record as "Gerlie") as an in-home caregiver for Blaine and that he had paid her approximately $4,200 for her services during the first accounting period. In opposition to Dean's motion for summary judgment, Donna provided Kirbac's declaration stating she had never met Dean and had not provided care services for Blaine or purchased groceries for him. We are concerned, as was the trial court, about the accuracy of Dean's representations in the first accounting; however, as the trial court pointed out, Donna has failed to explain why the first accounting did not provide her sufficient information to investigate a fraud claim at the time. In order to establish the second type of extrinsic fraud, " 'it is insufficient for a party to come into court and simply assert that the judgment was premised upon false facts. The party must show that such facts could not reasonably have been discovered prior to the entry of judgment.' [Citation.]" (*In re Margarita D.* (1999) 72 Cal.App.4th 1288, 1295 [85 Cal.Rptr.2d 713].) Thus, the fraud, if any, was intrinsic rather than extrinsic (see *Lazzarone, supra*, 181 Cal.App.3d at pp. 588–589) and does not provide an exception under Probate Code section 2103, subdivision (b) to the preclusive effect of the order approving the first accounting.

### (3) *Need for conservatorship*

Donna argues that Dean misrepresented to the probate court that Blaine needed a conservatorship. Dr. Timothy O'Neal had provided a capacity declaration in December 2002 stating that Blaine had the capacity to give

informed consent to medical treatment, had no dementia, and had no impairment in mental function except for moderate impairment in memory and abstract reasoning. The problem with Donna's argument, however, is that the probate court had previously made the determination that Blaine needed a conservatorship. Donna contends, in effect, that she always knew Blaine did not need a conservatorship. Thus, Donna has failed to establish extrinsic fraud.[3]

### (4) *Availability of other services*

Donna argues that Dean failed to inform the probate court of the availability of services to Blaine from friends and others who were willing to assist him without charge. Donna has failed to provide authority for her argument that a conservator is required to solicit unpaid assistance from the conservatee's circle of friends and relatives. We conclude that Dean's failure to do so did not amount to extrinsic fraud.

### (5) *Failure to report waste*

Donna claims the accountings failed to report that Dean committed waste by failing to rent Blaine's apartments. However, the first and second accountings identified the rentals received from each apartment by number and clearly showed that some apartments did not generate income for some or all of the year. Donna testified in her deposition there were two structures on one lot—a main house with five apartments and a carriage house with three apartments, and a house on a second lot with another three apartments. Blaine lived in one of the apartments in the main house. In short, the first through third accountings Dean filed with the probate court showed the rental income and related expenses to Blaine's estate, and Donna received notice of the hearings on the accountings. Donna has failed to show extrinsic fraud.

### (6) *Viability of claims encompassed in Dean's fourth accounting*

As Dean acknowledges, matters arising *after* the periods covered by the first three accountings, specifically, matters arising on or after May 1, 2006, have not been adjudicated and are therefore not barred by res judicata. Donna's complaint also encompasses claims that in his fourth accounting, Dean reported costs incurred for unnecessary services.

---

[3] Although we conclude Donna has failed to establish extrinsic fraud, we note that we are troubled by the fact that Blaine was placed under a conservatorship of his person and estate in 2002, even though Dr. O'Neal's declaration indicates Blaine was capable of making his own informed decisions, and subsequent medical evaluations reached the same conclusion until, in 2009, the probate court terminated the conservatorship of his person.

In her opposition to the motion for summary judgment, Donna provided declarations from Dr. Timothy O'Neal stating that Blaine was capable of giving informed consent, both medically and financially. In his February 2006 declaration, Dr. O'Neal noted that although Blaine had hearing and vision impairment, he was self-providing, lived by himself, and did well. Donna also provided the March 2009 statement of Dr. Asma Jafri, as follows: "No apparent impairment noted with level of arousal, orientation or ability to attend and concentrate. No apparent impairment with information processing, understanding and communicating, recognizing familiar objects, appreciating quantities, reason using abstract concepts or reasoning logically. No impairment with planning, organizing and carrying out actions. No apparent impairment with thought process. Subject has the capacity to give informed consent to any form of medical treatment. He does not have Dementia as defined in the current edition of Diagnostic and Statistical Manual of Mental Disorders." As noted, the probate court terminated the conservatorship of Blaine's person in May 2009 but continued the conservatorship of his estate. With respect to Blaine's needs for assistance, Dr. Jafri wrote that Blaine was able to manage his finances and medication with assistance, although he "need[ed] help with housekeeping, shopping and getting out into the community." However, he was "able to perform all physical activities of daily living such as: feeding, taking a bath or cleaning after toileting, getting in and out of bed independently and getting dressed."

Dean asserted, however, that Blaine "required the presence of live-in caregivers. When Donna Jean Knox objected to the use of live-in caregivers, I hired caregivers that worked in shifts to cover a twenty-four hour period." We conclude that Donna has established a triable issue of material fact as to whether Dean, as conservator, incurred costs to Blaine's estate for unnecessary services. Thus, summary adjudication was improper as to the cause of action for elder financial abuse. (Code Civ. Proc., § 437c, subd. (*o*).)

### C. *Elder Physical Neglect*

#### 1. *Issue Framed by the Pleadings*

Donna alleged that Dean committed elder physical neglect by failing to "monitor [Blaine's] physical condition" regarding a carcinoma on his nose, vision impairments, dental needs, personal hygiene, hearing loss, foot problems, regular physical check-ups, dietary assessments, and monitoring of nutritional food consumption. The complaint further alleged: "As a result, [Blaine] suffered from medical inattention and treatment. The physical ailments enumerated . . . escalated and [Blaine] suffered from increasing symptoms including pain and unnecessary deterioration of his physical well-being."

Welfare and Institutions Code section 15610.57 provides:

"(a) 'Neglect' means either of the following:

"(1) The negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise. [¶] . . . [¶]

"(b) Neglect includes, but is not limited to, all of the following:

"(1) Failure to assist in personal hygiene, or in the provision of food, clothing, or shelter.

"(2) Failure to provide medical care for physical and mental health needs. . . .

"(3) Failure to protect from health and safety hazards.

"(4) Failure to prevent malnutrition or dehydration. . . ."

■ Dean argues that Donna failed to plead a cause of action for elder physical neglect because she "failed to set forth sufficient facts to support her allegations of physical neglect." However, the rule governing pleading in this state is that a plaintiff need only "set forth the ultimate facts constituting the cause of action, not the evidence by which [the] plaintiff proposes to prove those facts." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 212 [197 Cal.Rptr. 783, 673 P.2d 660], fn. omitted, superseded by statute on another ground as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207].) We conclude that Donna properly alleged a cause of action for elder physical neglect under Welfare and Institutions Code section 15610.57, subdivisions (a) and (b).

### 2. *Dean's Showing in Motion for Summary Judgment*

Dean moved for summary judgment on the ground that res judicata barred all of Donna's claims that arose during the first three accounting periods. In his first accounting, Dean stated that he and "staff case managers traveled to [Blaine's] home monthly to assess his overall health, nutrition, socialization and any other concerns that have arisen," and "[c]ase managers assess [Blaine's] hygiene, cleanliness of his home and availability of supplies," and "arrange medical appointments, transport if necessary and follow-up with any changes to the physician orders or medications." The second and third

accountings contain similar statements. We conclude the probate court's orders approving those accountings are res judicata as to issues concerning Blaine's physical care.

Dean further contends he established a complete defense to the claims arising during the fourth accounting period. In opposition to the motion for summary judgment, he provided a declaration stating: "I carefully monitored the health of [Blaine] personally and with the aid of various case managers employed by C.A.R.E. as well as caregivers." He further declared: "Necessary doctor appointments were either scheduled by me, a case manager or a caregiver, and I made sure [Blaine] attended such doctor appointments."

To defeat a motion for summary judgment, a party cannot rely on legal conclusions or assertions of ultimate facts. (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 529 [89 Cal.Rptr.3d 801].) Rather, the party must provide admissible evidence, for example, in the form of declarations that cite evidentiary facts. (*Ibid.*) Dean's statement that he "carefully monitored" Blaine's health and provided for "[n]ecessary doctor appointments" are merely assertions of ultimate fact, and as such, were insufficient to support summary judgment in his favor. We conclude summary adjudication of the cause of action for elder physical neglect was improper.

### D. Breach of Fiduciary Duty

#### 1. Issue Framed by the Pleadings

Incorporating the allegations of her claims of elder financial abuse and elder physical neglect, Donna alleged that Dean breached his fiduciary duty to Blaine and "caused lost profits and actual losses to his estate . . . ." The specific allegations included that Dean committed waste· by failing to rent Blaine's apartments, failed to repair the apartments so they could be rented, allowed the apartments to deteriorate, allowed a caregiver to live rent free in one apartment, allowed friends to rent other apartments at below-market rates, and paid for unnecessary services or services that were not actually performed, all of which resulted in losses to the estate.

■ Dean contends Donna failed to plead sufficient facts to sustain a cause of action for breach of fiduciary duty. "The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. [Citation.]" (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 483 [80 Cal.Rptr.3d 329].) We conclude that Donna's allegations were sufficient to state a cause of action for breach of fiduciary duty.

### 2. *Dean's Showing in Motion for Summary Judgment*

Dean asserts the res judicata defense against all causes of action. The cause of action for breach of fiduciary duty arose from essentially the same acts as the cause of action for elder financial abuse, and we therefore conclude that res judicata bars Donna's claims to the extent they arose during the first three accounting periods. However, Donna's complaint encompasses claims that arose during the fourth accounting period, to which the defense of res judicata does not apply. Summary adjudication was improper, therefore, because Dean has failed to establish a complete defense to the entire cause of action. (Code Civ. Proc., § 437c, subd. (*o*).)

### E. *Fraud*

#### 1. *Issue Framed by Pleadings*

Donna alleged Dean had a duty to disclose certain facts to Blaine but "concealed and suppressed the fact that [he] would not carry out his duties as conservator of [Blaine's] estate, including the duty to repair all apartments, rent them for the fair market rental rate, and refrain from squandering [Blaine's] monies to pay for phantom caregiving services that were neither performed or needed." She further alleged Blaine's "physical ailments made him unaware of [Dean's] intentional nondisclosures," and "[h]ad [Blaine] known the true facts, he would not have let [Dean] breach his fiduciary duties and squander [Blaine's] estate." (Capitalization omitted.) Dean contends Donna failed to plead any facts with particularity to support a claim of fraud.

■■■ The elements of an action for fraud based on concealment are: (1) the defendant concealed or suppressed a material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed the fact with the intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would not have acted as he did if he had known of the concealed fact; and (5) as a result of the concealment of the fact, the plaintiff sustained damage. (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 748 [54 Cal.Rptr.3d 527].) ■■■ Fraud must be pleaded with specificity rather than with " 'general and conclusory' " allegations. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184 [132 Cal.Rptr.2d 490, 65 P.3d 1255].)

We agree that Donna's complaint fails to identify any specific act taken in reliance on the alleged nondisclosures. We conclude the complaint failed to plead a cause of action for fraud, and summary adjudication was proper as to that cause of action.

### F. *Constructive Fraud*

#### 1. *Issues Framed by Pleadings*

Incorporating all the allegations of the previous causes of action, Donna alleged Dean's acts constituted breaches of duty by which Dean obtained monetary advantages. She alleged that Dean should not be allowed to retain his "ill-gotten gain."

 Dean contends that Donna failed to plead any facts sufficient to support a cause of action for constructive fraud. "Constructive fraud consists: [¶] 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, [¶] 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." (Civ. Code, § 1573.) A breach of a fiduciary duty usually constitutes constructive fraud. (*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 563 [29 Cal.Rptr.2d 463].) Constructive fraud, like actual fraud, must be pleaded with specificity. (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 961 [23 Cal.Rptr.3d 233].)

We conclude that Donna's allegations of constructive fraud failed to plead a cause of action with specificity, in that she failed to identify any act taken in reliance on Dean's actions, and summary adjudication was proper as to that cause of action.

### G. *Failure to Transfer Case to Probate Court*

Donna contends that by failing to transfer the case to probate court and failing to appoint counsel for Blaine to assist him in reviewing the first and second accountings, the trial court denied Blaine his constitutional due process rights.

 The probate court has concurrent jurisdiction with the general civil calendar of the superior court over probate conservatorships and civil actions involving claims of elder abuse when the elder has had a conservator appointed. (Welf. & Inst. Code, § 15657.3, subds. (a), (b).) However, as far as the record before us shows, Donna, Blaine's guardian ad litem, never requested that the case be transferred to the probate court, and she has cited no authority establishing that the trial court had a sua sponte duty to transfer the case. We find no error.

## H. *Evidentiary Rulings*

Donna contends the trial court erred in its evidentiary rulings. Because we have found reversible error on other grounds, we need not address those rulings.

## IV. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to enter a new order denying Dean's motion for summary judgment and granting his motion for summary adjudication as to the causes of action for fraud and constructive fraud. Appellant is awarded costs on appeal.

Ramirez, P. J., and King, J., concurred.