Filed 7/22/13  Starcevic v. Chase Home Financial CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PETER STARCEVIC, | D061064 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2010-00071619-CU-OR-EC) |
| CHASE HOME FINANCE, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Peter Starcevic, in pro. per., for Plaintiff and Appellant.

AlvaradoSmith, Theodore E. Bacon and Ricardo Diego Navarrette for Defendants and Respondents.

Plaintiff Peter Starcevic appeals from a judgment of dismissal entered after the trial court sustained a demurrer without leave to amend filed by defendants JPMorgan Chase Bank,

N.A. (Chase)[1] and California Reconveyance Company (CRC) (collectively, defendants) to Starcevic's second amended complaint. Starcevic defaulted on a loan secured by a deed of trust against a parcel of residential property that he owned, and sued defendants after the property was sold in nonjudicial foreclosure proceedings. The court had previously sustained defendants' demurrer to Starcevic's first amended complaint without leave to amend as to causes of action for declaratory relief, accounting, conversion, and quiet title, and with leave to amend as to the cause of action for fraud. In his second amended complaint, Starcevic recast his fraud cause of action as eight causes of action for intentional misrepresentation and eight causes of action for negligent misrepresentation.[2] All of the causes of action in the first and second amended complaints are based on Starcevic's claims that defendants were not entitled to foreclose on his property because they did not have possession of the original promissory note evidencing his loan and were not valid assignees of the deed of trust securing the note, and that Starcevic made two payments on his loan that defendants never credited to the loan. Starcevic contends the court abused its discretion in sustaining defendants' demurrers without

---

[1] JP Morgan responds to this appeal for itself and as successor by merger to named defendant Chase Home Finance, LLC.

[2] In their respondents' brief, defendants state that the second amended complaint contained 16 causes of action and that the even numbered causes of action were for negligent misrepresentation and the odd numbered causes of action were for fraud (i.e., intentional misrepresentation). However, as defendants pointed out in their demurrer to the second amended complaint, Starcevic inadvertently designated two consecutive causes of action as the sixth cause of action. Consequently, starting with the second "sixth" cause of action, the even numbered causes of action are for intentional misrepresentation and the odd numbered causes of action are for negligent misrepresentation, with the 16th and final cause of action being designated the "Fifteenth Cause of Action for Negligent Misrepresentation."

leave to amend as to his causes of action for declaratory relief, accounting, conversion, fraud (intentional misrepresentation), and negligent misrepresentation.[3]  We affirm.


FACTUAL AND PROCEDURAL BACKGROUND

On appeal of a judgment of dismissal entered after the sustaining of a demurrer without leave to amend, we accept as true all the material allegations of the complaint, reasonable inferences that can be drawn from those allegations, and facts that may properly be judicially noticed.[4]  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 672; *Saks v. Damon Raike & Co.* (1992) 7 Cal.App.4th 419, 422.)  However, we do not accept as true contentions, deductions, or conclusions of fact or law.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  Accordingly, our statement of facts is based on the allegations in the first and second amended complaints and matters of which the trial court took judicial notice.

Starcevic and his wife Janice obtained the subject loan in the amount of $333,500 in September 2006.  The deed of trust securing the loan identified VirtualBank as the lender,

---

[3]    Starcevic does not challenge the dismissal of his quiet title cause of action.

[4]    In ruling on both demurrers, the trial court granted defendants' request to take judicial notice of the following:  (1) the deed of trust recorded in September 2006 securing Starcevic's loan from VirtualBank; (2) the assignment of deed of trust recorded in July 2010 assigning Starcevic's deed of trust to Bank of America; (3) the substitution of trustee recorded in July 2010 substituting CRC as trustee under Starcevic's deed of trust; (4) the Notice of Default and Election to Sell Under Deed of Trust recorded in July 2010 regarding Starcevic's loan and property; (5) the Notice of Trustee's Sale recorded in October 2010 regarding Starcevic's property; (6) the court's December 7, 2010, minute order denying Starcevic's request for a preliminary injunction; (7) an order issued by the Office of Thrift Supervision in September 2008 appointing the Federal Deposit Insurance Corporation (FDIC) as receiver of Washington Mutual Bank (Washington Mutual); and (8) the Purchase and Assumption Agreement (P&A Agreement) between FDIC as receiver of Washington Mutual and Chase whereby Chase purchased certain assets and assumed certain liabilities, duties, and obligations of Washington Mutual.

3

Fidelity National Title Co. as the trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary acting solely as nominee for the lender. In September 2008, the Office of Thrift Supervision put Washington Mutual into receivership and appointed the FDIC as receiver.[5] Chase purchased certain assets of Washington Mutual from FDIC under a P&A Agreement with FDIC.

On July 2, 2010, an assignment of the deed of trust securing Starcevic's loan was recorded showing that MERS had assigned all beneficial interest in the deed of trust to "Bank of America, National Association as successor by merger to LaSalle Bank, N[.]A[.] as trustee for WMALT 2007-OA5." On the same day, a Substitution of Trustee was recorded substituting defendant CRC as trustee under the deed of trust, and a Notice of Default on Starcevic's loan was recorded. The Notice of Default stated that the amount of past due payments plus permitted costs and expenses was $9,215.56 as of July 1, 2010. On October 7, 2010, a Notice of Trustee's Sale was recorded that stated the estimated unpaid balance and other charges on Starcevic's loan was $376,763.79.

Starcevic represents in his opening brief that he filed his original complaint in October 2010 and was granted a temporary restraining order enjoining the foreclosure proceedings, although neither the original complaint nor temporary restraining order are part of the record on appeal. The court denied Starcevic's application for a preliminary injunction enjoining the foreclosure.

---

5    Apparently Washington Mutual acquired Starcevic's loan from VirtualBank or a successor of VirtualBank. It is not clear from Starcevic's pleadings or the matters of which the court took judicial notice how and when Washington Mutual acquired the loan, but the second amended complaint and judicially noticed materials establish that Chase acquired the loan when it assumed Washington Mutual's assets from FDIC as receiver for Washington Mutual.

4

As noted, Starcevic filed a first amended complaint that included causes of action for declaratory relief, accounting, conversion, fraud, and quiet title. The court sustained defendants' demurrer to the first amended complaint as to each cause of action without leave to amend except the fourth cause of action for fraud, as to which the court granted leave to amend. In his second amended complaint, Starcevic set forth eight causes of action for intentional misrepresentation and for each of those causes of action, a corresponding cause of action for negligent misrepresentation based on the same allegations.

The key allegations in Starcevic's second amended complaint are that Starcevic made loan payments of $1,500 and $1,600 to Washington Mutual in July 2007 and June 2009, respectively, that were never properly credited to his account.[6] As to both payments, he alleged that Chase (referred to in the second amended complaint as Chase and/or Chase Servicing) purchased the "subject mortgage allegedly free of all liabilities and borrowers claims[,]" but falsely represented that they were Washington Mutual agents, that his payment would be properly credited to his loan, and that any negative reporting regarding the payment would be remedied. He further alleged that a vice president of Chase named Larry Thode promised him a timely response as to why his check was cashed but never credited and as to the status of the correction of negative credit reporting. However, Thode allegedly knew that those representations were false and that he had no intention of doing anything regarding the "missing payments or contacting credit agencies to report the missing payment." Chase allegedly retained the payment "for its benefit with no intention of crediting [Starcevic's]

---

6    At various places in the second amended complaint Starcevic refers to the July 2007 payment as the *June* 2007 payment.

mortgage account or correcting improper negative credit reporting due to its Asset and Purchase agreement of [September 25, 2008]."

Starcevic's eighth cause of action (actually the ninth) alleges that Chase vice president Ditas Dalagan falsely represented to him that the June 2009 check had been credited to his account as the May 2009 payment. The 10th cause of action (actually the 11th) alleges that Chase vice president Paul Ang falsely represented to him that both the July 2007 and June 2009 check had been credited to his account and that the negative credit reporting due to his account's past-due status had been corrected. The 12th cause of action (actually the 13th) does not allege a misrepresentation made to Starcevic or the element of reliance. It alleges, essentially, that defendants told *CRC*, as trustee, to proceed with the foreclosure against Starcevic's property despite having earlier informed CRC that the past due amount stated in the Notice of Default was incorrect and that it had promised Starcevic that it would properly credit his loan account with the two payments in question. The 14th cause of action (actually the 15th) likewise does not allege that Starcevic relied on a representation; it simply alleges that Chase vice president Eleanor Mendoza provided Starcevic with declarations and fabricated loan histories that falsely showed the missing loan payments had been credited to his account.

The court sustained defendants' demurrer to the entire second amended complaint without leave to amend and entered a judgment of dismissal.

## DISCUSSION

"A demurrer tests the legal sufficiency of the complaint, and the granting of leave to amend involves the trial court's discretion. Therefore, an appellate court employs two separate standards of review on appeal. [Citations.] First, the complaint is reviewed de novo to

6

determine whether it contains sufficient facts to state a cause of action."  (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.)  Second, when the demurrer is sustained without leave to amend, we determine whether the trial court abused its discretion in denying leave to amend.  (*Ibid.*)  "On review of the trial court's refusal to grant leave to amend, we will only reverse for abuse of discretion if we determine there is a reasonable possibility the pleading can be cured by amendment.  Otherwise, the trial court's decision will be affirmed for lack of abuse."  (*Id.* at p. 1498.)  The plaintiff has the burden of showing how the complaint can be amended to state a valid cause of action.  (*Chavez v. Whirlpool Corp.* (2001) 93 Cal.App.4th 363, 368-369.)

## I. *Declaratory Relief*

Code of Civil Procedure section 1060 authorizes an action for declaratory relief only "in cases of actual controversy relating to the legal rights and duties of the respective parties . . . ."  "Once an 'actual controversy' exists, it is within the trial court's discretion to grant or deny declaratory relief, and a reviewing court will not disturb that exercise of discretion absent abuse."  (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 885, citing *Orloff v. Metropolitan Trust Co*. (1941) 17 Cal.2d 484, 489 ["a judgment refusing to entertain a complaint for declaratory relief is not reviewable upon appeal except for an abuse of discretion"].)

"Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs."  (*Canova v. Trustees of Imperial Irrigation District Employee Pension Plan* (2007) 150 Cal.App.4th 1487, 1497.)  The declaratory relief procedure " 'serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or

7

commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.' " (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 848 (*Babb*).)

In the words of the *Babb* court, "[n]o such preventive benefit is possible here." (*Babb, supra,* 3 Cal.3d at p. 848.) All of the causes of action in Starcevic's first and second amended complaints are based, in whole or in part, on defendants' alleged past wrongs of failing to credit two payments to his loan account and initiating foreclosure proceedings against his property without having corrected those wrongs.[7] In his cause of action for declaratory relief, Starcevic alleged that "he has made payments on his mortgage which were cashed and retained by [Chase], yet were not credited to his mortgage balance. Plaintiff has request[ed] an accounting to deal with the discrepancies. Plaintiff's requests have been substantially ignored and despite the good faith dispute [Chase] initiated foreclosure proceedings." He further alleged that defendants had recorded a Notice of Default and scheduled a Trustee's sale. Although he did not clearly specify the precise issue he wanted the court to decide through declaratory relief regarding the alleged uncredited payments, it appears he sought a judicial determination of the propriety of the subject foreclosure proceedings based on a finding of whether he had actually defaulted on his loan or whether his default was solely the result of

_____

[7] Starcevic also sought declaratory relief as to whether defendants had standing or authority to conduct the foreclosure sale based on his allegations that "defendants do not possess the Original Promissory Note and . . . are not valid assignees of the Deed of Trust[,]"and that "[d]efendants claim[] they have standing to collect on the Promissory Note and conduct a non-judicial foreclosure sale under the Deed of Trust." Those allegations are also the basis of his cause of action to quiet title. However, he has waived the issue of defendants' standing and authority to foreclose on appeal because he does not address it in his appellate briefs. (*Tan v. California Fed. Sav. & Loan Assn.* (1983) 140 Cal.App.3d 800, 811 [issues not raised in an appellant's brief are deemed waived or abandoned].)

8

defendants' failure to credit two payments to his loan account. In any event, the cause of action for declaratory relief is based on alleged past wrongs; Starcevic has not alleged facts showing the necessity of a judicial declaration of the parties' future rights vis-à-vis each other. Therefore, the court did not abuse its discretion in sustaining defendants' demurrer without leave to amend as to cause of action for declaratory relief.

## II. *Accounting*

Is his cause of action for an accounting, Starcevic alleged that "an accounting of the mortgage account is necessary to determine payments made, and fees, penalties and interest charged to him." He further alleged that because his "claims against Defendants are likely to result in a net amount owing to the plaintiff, it is necessary to accurately determine the amounts currently owed by plaintiff, if at all."

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is *due the plaintiff* that can only be ascertained by an accounting." (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179, italics added.) A cause of action for accounting does not lie on the facts alleged in the first amended complaint because there is and can be no allegation of a balance owed to *Starcevic* on the subject loan account. If Starcevic's pursuit of this action were to result in a net amount owing to him, as he alleged in his cause of action for an accounting, it would not be a balance due him on his loan account that could only be ascertained by an accounting; it would be the result of an award of damages. The court properly sustained defendants' demurrer without leave to amend as to the accounting cause of action.

### III. *Conversion*

Starcevic's cause of action for conversion is based on defendants' alleged failure to apply payments "[totaling] approximately $3,100" to his loan account. Defendants allegedly "retained the money for their own use and benefit and have refused to provide an accounting to plaintiff of where his money is."

"The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." (*Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543-544.) " 'To establish a conversion, plaintiff must establish an actual interference with his *ownership* or *right of possession*. . . . Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion.' " (*Moore v. Regents of University of California, supra,* 51 Cal.3d at p. 136.)

Starcevic's conversion claim fails because he did not and cannot allege that he owned or had a right to possess the subject loan payments owing to Chase *at the time of the alleged conversion.* Defendants' misapplication of the loan payments necessarily would have been after Starcevic submitted the payments to Chase, as he was required to do under his loan agreement. Thus, at the time of the alleged conversion, *defendants*, rather than Starcevic, owned and had the right to possess the payments. As a federal court applying California law noted in dismissing a conversion claim based on misapplication of mortgage loan payments, "[c]learly, a mortgagor does not have a right to possess payments made under the loan—even if, as alleged by Plaintiff, they were misapplied by Defendants for an improper use. Plaintiff's

10

conversion claim fails."  (*Bennett v. One West Bank* (S.D. Cal. June 23, 2011, No. 10cv1884-BTM-(RBB)) 2011 WL 2493699.)  The court did not err in sustaining defendants' demurrer to the cause of action for conversion without leave to amend.

## IV.  *Fraud*

" ' "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." '  [Citation.]  The tort of negligent misrepresentation does not require scienter or intent to defraud.  [Citation.]  It encompasses '[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citation], and '[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true' . . . ."  (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173-174.)  In both causes of action, the plaintiff must plead actual reliance on the misrepresentation.  (*Cadlo v. Owens-Illinois, Inc.* (2004) 125 Cal.App.4th 513, 519.)

As discussed in our factual and procedural background, Starcevic's intentional and negligent misrepresentation claims are largely based on defendants' alleged failure to properly credit to his loan account payments of $1,500 and $1,600 that he made to Washington Mutual in July 2007 and June 2009, respectively.  He alleges various promises and representations that those payments would be or had been properly credited to his loan, that any negative reporting regarding the payment would be remedied.  In most of the 16 misrepresentation causes of action, Starcevic alleges that he "reasonably relied" on alleged false promises or other

11

misrepresentations.[8]  However, he does not allege any action that he took in reliance on an alleged misrepresentation.

"Each element in a cause of action for fraud or negligent misrepresentation must be factually and specifically alleged.  [Citation.]  The policy of liberal construction of pleadings is not generally invoked to sustain a misrepresentation pleading defective in any material respect.  [Citation.]  Thus, the mere assertion of 'reliance' is insufficient.  *The plaintiff must allege the specifics of his or her reliance on the misrepresentation to show a bona fide claim of actual reliance*."  (*Cadlo v. Owens-Illinois, Inc., supra,* 125 Cal.App.4th at p. 519, italics added.)  That is, "[t]he plaintiff must allege *actions*, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations."  (*Small v. Fritz Companies, Inc., supra,* 30 Cal.4th at p. 185, italics added.)  A complaint fails to plead a cause of action for fraud when it fails to identify any specific act taken in reliance on the alleged misrepresentation or nondisclosure.  (*Knox v. Dean* (2012) 205 Cal.App.4th 417, 433 [nondisclosure].)

The second amended complaint here fails to identify any specific act that Starcevic took in reliance on the various alleged false promises and misrepresentations; it merely asserts reliance, which is insufficient.  (*Cadlo v. Owens-Illinois, Inc., supra,* 125 Cal.App.4th at

---

8      In all but two of the 16 causes of action for intentional and negligent misrepresentation, Starcevic alleged that he "reasonably relied on false promises" by Chase or an identified Chase vice president.  In the first, third, fifth, and seventh (designated the sixth) causes of action, he also alleged that he relied on representations that "the cashed, yet unapplied payment, would be resolved in a timely manner."  In the ninth and 11th causes of action (designated eighth and 10th causes of action, respectively) he alleged that he reasonably relied on "representations the cashed, yet unapplied payments, were resolved and plaintiff's account was current."  In the 13th and 15th causes of action (designated the 12th and 14th causes of action, respectively) he omitted a reliance allegation.

p. 519.) Generally, the reliance element of a fraud claim "exists when the misrepresentation . . . was an immediate cause of the plaintiff's conduct which *altered his or her legal relations*, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, italics added.) Although Starcevic may have relied on the alleged false promises specified in the second amended complaint in the sense of believing or hoping that defendants would follow through on their promises, he has not alleged reliance in a *legal* sense that altered his legal relations with defendants. (See *Mariani v. Price Waterhouse* (1999) 70 Cal.App.4th 685, 707.)

Starcevic asks that we grant leave to amend if we conclude that defendants' demurrers were properly sustained. However, he has not shown how he could amend the complaint to cure his failure to sufficiently allege the element of justifiable reliance in his misrepresentation causes of action. We conclude that the court properly sustained defendants' demurrer to the second amended complaint without leave to amend.

V. *Liability for Washington Mutual's Conduct*

In this appeal defendants argue, as they did in both of their demurrers, that to the extent Starcevic's claims against Chase are premised on alleged conduct by Washington Mutual before Chase acquired Washington Mutual's interest in the subject loan on September 25, 2008, the demurrers are properly sustained because Chase did not assume liability for any alleged wrongful conduct by Washington Mutual before that date under the P&A Agreement between Chase and FDIC as receiver of Washington Mutual. Section 2.5 of the P&A Agreement reads: "**Borrower[s'] Claims**. Notwithstanding anything to the contrary in this

13

Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank [Washington Mutual] prior to failure [September 25, 2008], or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank [Chase]."

Although it is unnecessary to reach this issue in light of our conclusion that Starcevic has not stated a valid cause of action, we agree with defendants that under section 2.5 of the P&A Agreement, Chase cannot be liable for Washington Mutual's alleged misapplication of Starcevic's July 2007 payment. The court properly took judicial notice of the P&A Agreement. (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752-761.) The legal effect of the P&A Agreement forecloses, as a matter of law, any liability on the part of Chase for borrower claims that predate the agreement because under section 2.5 of the agreement, Chase expressly disclaimed assumption of liability for borrower claims related to loans or loan commitments made by Washington Mutual. (*Id.* at pp. 762-763, and cases cited therein.)

## DISPOSITION

The judgment of dismissal is affirmed.


                                                                        NARES, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.