[No. G033254. Fourth Dist., Div. Three. Jan. 12, 2005.]

SARAH JANE SCHAUER, Plaintiff and Appellant, v.
MANDARIN GEMS OF CALIFORNIA, INC., Defendant and Respondent.

950

**COUNSEL**

Mark B. Plummer for Plaintiff and Appellant.

Latham & Watkins, James W. Daniels and Christopher E. Campbell for Defendant and Respondent.

**OPINION**

**IKOLA, J.**—Sarah Jane Schauer (plaintiff) appeals from a judgment of dismissal in favor of Mandarin Gems of California, Inc., doing business as Black, Starr & Frost (defendant) after the court sustained defendant's demurrer to plaintiff's second amended complaint without leave to amend. Plaintiff sought to recover on various theories based on her discovery that a diamond ring given to her as an engagement gift prior to her marriage to her now former husband, Darin Erstad, allegedly was not worth the $43,000 he paid defendant for it in 1999. Erstad is not a party to this action.

We reverse the judgment and remand. We conclude plaintiff has standing as a third party beneficiary of the sales contract between Erstad and defendant, and she has adequately pleaded a contract cause of action based on

allegations of defendant's breach of express warranty. Defendant must answer to that claim. In all other respects, the pleading is defective and cannot be cured by amendment.

## FACTS

Our factual summary "accepts as true the facts alleged in the complaint, together with facts that may be implied or inferred from those expressly alleged." (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505 [108 Cal.Rptr.2d 657].)

Plaintiff and Erstad went shopping for an engagement ring on August 15, 1999. After looking at diamonds in premier jewelry establishments such as Tiffany and Company and Cartier, they went to defendant's store, where they found a ring that salesperson Joy said featured a 3.01 carat diamond with a clarity grading of "SI1." Erstad bought the ring the same day for $43,121.55. The following month, for insurance purposes, defendant provided Erstad a written appraisal verifying the ring had certain characteristics, including an SI1 clarity rating and an average replacement value of $45,500. Paul Lam, a graduate gemologist with the European Gemological Laboratory (EGL), signed the appraisal.

The couple's subsequent short-term marriage was dissolved in a North Dakota judgment awarding each party, "except as otherwise set forth in this Agreement," "the exclusive right, title and possession of all personal property . . . which such party now owns, possesses, holds or hereafter acquires." Plaintiff's personal property included the engagement ring given to her by Erstad.

On June 3, 2002, after the divorce, plaintiff had the ring evaluated by the "Gem Trade Laboratory," which gave the diamond a rating of "SI2 quality," an appraisal with which "multiple other [unidentified] jewelers, including one at [defendant's store]" agreed. That was how plaintiff discovered defendant's alleged misrepresentation, concealment, and breach of express warranty regarding the true clarity of the diamond and its actual worth, which is—on plaintiff's information and belief—some $23,000 less than what Erstad paid for it.

Plaintiff sued defendant on several theories. Three times she attempted to plead her case. In the first cause of action of the second amended complaint, she sought to recover under the Consumers Legal Remedies Act (the Act, Civ. Code, § 1760 et seq.), stating, inter alia, that had the true clarity of the diamond been known, plaintiff would not have "acquired said diamond by causing it to be purchased for her." Thereafter, if the written verification of

the clarity value sent to Erstad one month after the purchase had revealed the truth, plaintiff would have "immediately rescinded the sale based on a failure of consideration." The second cause of action, for breach of contract, alleged Erstad and defendant had a written contract under which Erstad agreed to purchase the ring "for the sole and stated purpose of giving it [to] Plaintiff," making plaintiff a third party beneficiary of the sales contract. Defendant breached the contract by delivering an engagement ring that did not conform to the promised SI1 clarity rating.

In her third cause of action, for constructive fraud, plaintiff claimed the existence of a special confidential relationship in which defendant was aware plaintiff and her "predecessor in interest," presumably Erstad, "were not knowledgeable and . . . were relying exclusively on the Defendants' integrity," but defendant falsely represented the clarity of the diamond with the intent to defraud "[p]laintiff and her predecessor in interest" to make the purchase at the inflated price. The fourth cause of action for fraud alleged defendant's malicious and deceitful conduct warranted punitive damages. In the fifth cause of action, plaintiff sought rescission under Civil Code section 1689 for defendant's alleged fraud in the inducement, mistake, and failure of consideration.

Appended to the pleading was a redacted copy of a North Dakota court's judgment filed July 19, 2001, granting Erstad and plaintiff a divorce pursuant to their "Stipulation and Agreement," entitling each party, as noted *ante*, "to the exclusive right, title and possession of all personal property of the parties, joint or several, which such party now owns, possesses, holds or hereafter acquires [*except as otherwise provided in the agreement*]," and awarding the parties their respective "personal effects, clothing and jewelry."

In its general demurrer to the second amended complaint and each cause of action, defendant asserted plaintiff had no viable claim under any theory because: (1) plaintiff was neither the purchaser of the ring nor a third party beneficiary of the contract between defendant and Erstad, who was not alleged to have assigned his rights to plaintiff; (2) the statute of limitations had expired for defendant's alleged violations of the Act; (3) plaintiff was not a buyer, and the ring tendered to Erstad conformed entirely to the contract; (4) defendant owed no special confidential or fiduciary duty to plaintiff upon which to predicate a fraud cause of action; (5) any alleged fraud was the act of EGL, not attributable to defendant; and (6) fraud was not pleaded with the required specificity.[1]

---

[1] Defendant noted that one of the exhibits to plaintiff's complaint showed defendant's disclaimer stating the EGL appraisal "SHOULD NOT BE USED AS THE BASIS FOR THE PURCHASE OR SALE OF THE ITEM/S LISTED WITHIN AND IS PROVIDED SOLELY AS AN ESTIMATE OF THE APPROXIMATE REPLACEMENT VALUES OF THE LISTED

The court again sustained the demurrer, this time without further leave to amend. The judgment of dismissal followed, and plaintiff appeals. As we will explain, the court erred. Although the complaint is fatally defective in some respects, plaintiff is entitled as a matter of law to pursue her contract claim as a third party beneficiary.

## DISCUSSION

*Standard of Review*

■ The trial court's decision to sustain a demurrer is a legal ruling, subject to de novo review. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501 [82 Cal.Rptr.2d 368].) "[W]e give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded, but not the truth of contentions, deductions or conclusions of law. We reverse if the plaintiff has stated a cause of action under any legal theory. [Citation.]" (*Barnett v. Fireman's Fund Ins. Co., supra,* 90 Cal.App.4th at p. 507.)

The issue before us is whether, on well-pleaded facts, plaintiff may maintain an action to recover the $23,000 difference between what Erstad paid for the diamond ring and what that gift was really worth, given its alleged inferior quality.

■ We begin with the rule that "[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (Code Civ. Proc., § 367.) Where the complaint shows the plaintiff does not possess the substantive right or standing to prosecute the action, "it is vulnerable to a general demurrer on the ground that it fails to state a cause of action." (*Carsten v. Psychology Examining Com.* (1980) 27 Cal.3d 793, 796 [166 Cal.Rptr. 844, 614 P.2d 276]; *Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1004 [79 Cal.Rptr.2d 544].)

The second amended complaint alleges "[d]efendant entered into a written contract with [Erstad] to purchase the subject engagement ring." The attached

---

ITEM/S AT THIS TIME FOR INSURANCE COVERAGE PURPOSES." Another section of that exhibit advised, "JEWELRY APPRAISAL AND EVALUATION IS PARTIALLY SUBJECTIVE, THEREFORE ESTIMATES OF REPLACEMENT VALUE MAY VARY FROM ONE APPRAISER TO ANOTHER." Another section stated: "THE APPRAISER AND BLACK, STARR & FROST AT SOUTH COAST PLAZA . . . DISCLAIM ALL RESPONSIBILITY AND LIABILITY RESULTING FROM ANY SUIT AT LAW WHICH MIGHT ARISE IN CONNECTION WITH THE APPRAISAL. IN NO SUCH EVENT WILL THE APPRAISER AND [defendant's] OFFICERS AND EMPLOYEES . . . BE LIABLE FOR ANY DAMAGES ARISING FROM THE USE OF OR RELIANCE ON THIS APPRAISAL, OR ANY OTHER CONSEQUENTIAL DAMAGES."

exhibit shows defendant issued a written appraisal to Erstad. Erstad is clearly a real party in interest, but he has not sued.

Plaintiff contends she, too, is a real party in interest because the North Dakota divorce judgment endowed her with all of Erstad's rights and remedies. As we will explain, this theory is wrong. However, as we will also discuss, plaintiff is correct in asserting she is a third party beneficiary of the sales contract. That status enables her to proceed solely on her contract claim for breach of express warranty. For the remainder, plaintiff is without standing to recover under any legal theory alleged, and the equitable remedy of rescission is also unavailable to her.

*Transfer of Erstad's Rights and Remedies to Plaintiff*

Plaintiff alleges and argues the North Dakota divorce judgment granted her "the exclusive right, title and possession of all [of her] personal property," including the engagement ring, and the judgment automatically divested Erstad of his substantive rights and transferred or assigned them to her by operation of law. Such is not the case.

■ Plaintiff undoubtedly owns the ring. (See Civ. Code, § 679 ["The ownership of property is absolute when a single person has the absolute dominion over it, and may use it or dispose of it according to his [or her] pleasure, subject only to general laws"]; see also N.D. Cent. Code, § 47-01-01 (2003) ["The ownership of a thing shall mean the right of one or more persons to possess and use it to the exclusion of others. In this code the thing of which there may be ownership is called property"].) But ownership of gifted property, even if awarded in a divorce, does not automatically carry with it ownership of the rights of the person who bought the gift. As will be seen, contrary to plaintiff's hypothesis, the divorce judgment did not give plaintiff the ring embellished with Erstad's rights under the contract or his choses in action.

■ A cause of action for damages is itself personal property. (See Civ. Code, § 953 ["A thing in action is a right to recover money or other personal property by a judicial proceeding"]; *Parker v. Walker* (1992) 5 Cal.App.4th 1173, 1182–1183 [6 Cal.Rptr.2d 908] ["A cause of action to recover money in damages . . . is a chose in action and therefore a form of personal property"]; see also *Iszler v. Jordan* (N.D. 1957) 80 N.W.2d 665, 668–669 [a chose in action is property].) At the time of the divorce judgment, all causes of action that could have been asserted against the jeweler by a buyer of the ring were Erstad's personal property. He was, after all, the purchaser of the ring. The divorce agreement awarded to each party his or her respective personal property, *except as otherwise expressly provided.* The disposition of the ring

was expressly provided for in the agreement, i.e., plaintiff was given her jewelry. Any extant choses in action against defendant, however, were *not* expressly provided for in the agreement; therefore, they were *retained* by Erstad as part of his personal property.

To be sure, Erstad could have transferred or assigned *his* rights to legal recourse to plaintiff (see, e.g., *Dixon-Reo Co. v. Horton Motor Co.* (1922) 49 N.D. 304 [191 N.W. 780, 782] [a right arising out of an obligation, i.e., a thing in action, is the property of the person to whom the right is due and may be transferred]), but there are no allegations Erstad either did so or manifested an intention to do so. (See, e.g., *Krusi v. S.J. Amoroso Construction Co.* (2000) 81 Cal.App.4th 995, 1005 [97 Cal.Rptr.2d 294]; *Vaughn v. Dame Construction Co.* (1990) 223 Cal.App.3d 144, 148 [272 Cal.Rptr. 261]; see also *Nisewanger v. W.J. Lane Co.* (1947) 75 N.D. 448, 455 [28 N.W.2d 409, 412] [under North Dakota law, when a chose in action is assignable, the clear intent to assign must be established].)[2]

*Third Party Beneficiary*

The fact that Erstad did not assign or transfer his rights to plaintiff does not mean she is without recourse. For although plaintiff does not have Erstad's rights by virtue of the divorce judgment, she nonetheless has standing in her own right to sue for breach of contract as a third party beneficiary under the allegation, inter alia, that "[d]efendant entered into a written contract with Plaintiff's fiancee [*sic*] to purchase the subject engagement ring for the sole and stated purpose of giving it [to] Plaintiff."

Civil Code section 1559 provides: "A contract, made expressly for the benefit of a third person, may be enforced by him [or her] at any time before the parties thereto rescind it." Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary " 'must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary.' " (*California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127, 1138 [4 Cal.Rptr.3d 583].)

" ' "[E]xpressly[,]" [as used in the statute and case law,] means "in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." ' [Citations.] '[A]n intent to make the obligation inure to the benefit

---

[2] The North Dakota and federal cases cited by plaintiff for general propositions of law do not materially advance her argument. We have no obligation "to discuss or distinguish [those] decisions . . . simply because [plaintiff] deems them to be controlling or contrary to the result reached by the court." (*Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1264 [82 Cal.Rptr.2d 85, 970 P.2d 872].)

of the third party must have been clearly manifested by the contracting parties.' " (*Sofias v. Bank of America* (1985) 172 Cal.App.3d 583, 587 [218 Cal.Rptr. 388].) Although this means persons only incidentally or remotely benefited by the contract are not entitled to enforce it, it does not mean both of the contracting parties must intend to benefit the third party: Rather, it means the promisor—in this case, defendant jeweler—"must have understood that the promisee [Erstad] had such intent. [Citations.] No specific manifestation by the promisor of an intent to benefit the third person is required." (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 591 [15 Cal.Rptr. 821, 364 P.2d 685]; see also *Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1064–1065 [95 Cal.Rptr.2d 864]; *Don Rose Oil Co., Inc. v. Lindsley* (1984) 160 Cal.App.3d 752, 757 [206 Cal.Rptr. 670]; *Zigas v. Superior Court* (1981) 120 Cal.App.3d 827, 837 [174 Cal.Rptr. 806].)

■ We conclude the pleading here meets the test of demonstrating plaintiff's standing as a third party beneficiary to enforce the contract between Erstad and defendant. The couple went shopping for an engagement ring. They were together when plaintiff chose the ring she wanted or, as alleged in the complaint, she "caused [the ring] to be purchased for her." Erstad allegedly bought the ring "for the sole and *stated* purpose of giving [the ring]" to plaintiff. (Italics added.) Under the alleged facts, the jeweler *must* have understood Erstad's intent to enter the sales contract for plaintiff's benefit. Thus, plaintiff has adequately pleaded her status as a third party beneficiary, and she is entitled to proceed with her contract claim against defendant to the extent it is not time-barred.

■ With regard to the limitations period, defendant incorrectly argued the complaint was time-barred by Code of Civil Procedure section 339's two-year statute of limitations applicable to oral contracts, i.e., the salesperson's alleged statement about the quality of the diamond. However, the applicable limitations period for breach of warranty in a contract for sale of goods is not set forth in the Code of Civil Procedure, but in California Uniform Commercial Code section 2725, which provides a four-year limitations period for "any contract for sale," regardless of whether the contract is written or oral. (See *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.,* (1989) 208 Cal.App.3d 1297, 1304 [256 Cal.Rptr. 735] ["The term 'any contract for sale' " as used in California Uniform Commercial Code section 2725 "includes an oral agreement"]; see also *Hachten v. Stewart* (1974) 42 Cal.App.3d Supp. 1, 3 [116 Cal.Rptr. 631] [to the same effect].) There can be no legitimate question the complaint is timely under the apt statute.

*Breach of Contract/Breach of Express Warranty*

Plaintiff's breach of contract claim is based on allegations of defendant's breach of express warranty in representing the engagement diamond was of

an SI1 clarity rating, when in actuality it was of an inferior quality. Other than noting the breach of express warranty claim is adequately pleaded, and that plaintiff is entitled to pursue it as a third party beneficiary, we express no opinion on its ultimate viability. It will be for the fact finder to determine from all the circumstances whether defendant's statements regarding the clarity rating of the diamond constituted an express warranty under California Uniform Commercial Code section 2313 or were merely nonactionable expressions of opinion.[3] In any event, this is the only cause of action on which plaintiff may proceed, as we discuss more fully, *post*.

*Rescission*

Plaintiff has attempted to plead a separate cause of action for rescission. She is not entitled to that remedy. Civil Code section 1559 provides, "A contract, made expressly for the benefit of a third person, may be *enforced* by him [or her] at any time before *the parties thereto rescind it.*" (Italics added.) But only the parties to the contract may rescind it. Civil Code section 1689 provides, in pertinent part, "(a) A contract may be rescinded if all the *parties* thereto consent. [¶] (b) A *party to a contract* may rescind the contract in the following cases: [¶] (1) If the consent of the *party* rescinding, or of any *party jointly contracting* with him [or her], was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the *party* as to whom he [or she] rescinds, or of any other *party to the contract jointly interested with such party.* [¶] (2) If the consideration for the obligation of the rescinding *party* fails, in whole or in part, through the fault of the *party* as to whom he [or she] rescinds." (Italics added.)

We have found no cases specifically holding the rescission remedy unavailable to a third party beneficiary, but the proposition is self-evident to a degree that might well explain the absence of precedent. Civil Code section 1559 grants a third party beneficiary the right to *enforce* the contract, not rescind it, and Civil Code section 1689 limits its grant of rescission rights to the contracting parties. Not only do the relevant statutes demand making rescission unavailable to a third party beneficiary, but common sense compels the conclusion. The interest of the third party beneficiary is as the intended recipient of the *benefits* of the contract, and a direct right to those benefits,

---

[3] California Uniform Commercial Code section 2313 provides, in pertinent part, "(1) Express warranties by the seller are created as follows: [¶] (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. [¶] (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. [¶] . . . [¶] (2) . . . [A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

i.e., specific performance, or damages in lieu thereof, will protect the beneficiary's interests. Rescission, on the other hand, extinguishes a contract between the parties. (Civ. Code, § 1688.) Plaintiff, not having participated in the agreement, not having undertaken any duty or given any consideration, is a stranger to the agreement, with no legitimate interest in voiding it. As a matter of law, without an assignment of Erstad's contract rights, plaintiff cannot rescind the sales contract to which she was not a party.

### Statutory Remedies for Consumers or Buyers

Plaintiff argues she has remedies under the Act because she is a "consumer." Unfortunately for plaintiff, by statutory definition Erstad was the consumer because it was he who purchased the ring. (See Civ. Code, § 1761, subd. (d) [" 'Consumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes"].)[4] Plaintiff's ownership of the ring was not acquired as a result of her own consumer transaction with defendant, and without an assignment of Erstad's rights, she does not fall within the parameters of consumer remedies under the Act.

### Actual and Constructive Fraud

 Further, the absence of an assignment of rights from Erstad precludes plaintiff from maintaining a cause of action for actual fraud. It is axiomatic that plaintiff must allege she "actually relied upon the misrepresentation; i.e., that the representation was 'an immediate cause of [her] conduct which alter[ed] [her] legal relations,' and that without such representation, '[she] would not, in all reasonable probability, have entered into the contract or other transaction.' " (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 711, p. 810; *Wilhelm v. Pray, Price, Williams & Russell* (1986) 186 Cal.App.3d 1324, 1331–1332 [231 Cal.Rptr. 355].) Here, Erstad allegedly relied on the representation and entered into the contract of sale. As we have explained, he retained the right, if any, to sue for actual fraud.

 As for constructive fraud, the complaint fails to plead facts establishing the requisite fiduciary or special confidential relationship between plaintiff and defendant. (See, e.g., *Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 548 [35 Cal.Rptr.2d 291]; *Peterson Development Co. v. Torrey Pines Bank* (1991) 233 Cal.App.3d 103, 116 [284 Cal.Rptr. 367] ["It is

---

[4] Moreover, plaintiff's argument that she is entitled to consumer rights and remedies under North Dakota statutes is unembellished by reasoned analysis and was raised for the first time in her reply brief. For these reasons, we decline to consider it. (See, e.g., *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764–765 [60 Cal.Rptr.2d 770]; *Troensegaard v. Silvercrest Industries, Inc.* (1985) 175 Cal.App.3d 218, 228 [220 Cal.Rptr. 712].)

essential to the operation of the doctrine of constructive fraud that there exist a fiduciary or special relationship"].) And even assuming plaintiff could overcome the standing hurdle, fraud causes of action must be pleaded with specificity, meaning "(1) general pleading of the legal conclusion of fraud is insufficient; and (2) every element of the cause of action for fraud must be alleged in full, factually and specifically, and the policy of liberal construction of pleading will not usually be invoked to sustain a pleading that is defective in any material respect." (*Wilhelm v. Pray, Price, Williams & Russell, supra,* 186 Cal.App.3d at p. 1331.) Plaintiff's complaint utterly fails the specificity test, not because she is an inartful pleader, but because those facts that are well pleaded necessarily negate the existence of the facts supporting the requisite elements of fraud.

## DISPOSITION

The judgment is reversed. The case is remanded with directions to the trial court to overrule defendant's demurrer to plaintiff's cause of action for breach of contract and order defendant to answer. In all other respects, the demurrer has been properly sustained without leave to amend. Plaintiff shall recover her costs on appeal.

Rylaarsdam, Acting P. J., and Bedsworth, J., concurred.