Filed 3/9/16  Akzam v. Sand Canyon Corp. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEFFREY AKZAM et al.,<br><br>        Plaintiffs and Appellants,<br><br>v.<br><br>SAND CANYON CORPORATION et al.,<br><br>        Defendants and Respondents. | A138099<br><br>(Solano County<br>  Super. Ct. No. FCS039699) |

This is an appeal from judgment after the trial court sustained the demurrer of defendants Sand Canyon Corporation and Wells Fargo Bank, N.A. (hereinafter, defendants) to the First Amended Complaint of plaintiffs Jeffrey and Dianne Akzam.[1]  In so doing, the trial court found that plaintiffs' claims were time-barred as a matter of law, and that plaintiffs had otherwise failed to state a valid claim with respect to any of their causes of action.  We affirm, albeit on different grounds – to wit, plaintiffs' lack of standing to seek rescission of a loan to which they are not parties.  (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252, fn. 1 ["we may affirm a trial court

---

[1]    The ultimate parent company of defendant Sand Canyon Corporation, formerly known as Option One Mortgage Corporation, is H&R Block, Inc.  In 2008, H&R Block, Inc. sold the mortgage loan servicing business of Option One Mortgage Corporation to American Home Mortgage Servicing, Inc.  For purposes of this appeal,  Sand Canyon Corporation, Option One Mortgage Corporation and American Home Mortgage Servicing, Inc. are jointly referred to as "defendants," along with defendant Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 (Wells Fargo Trust), which was assigned the subject loan in 2012.

1

judgment on any basis presented by the record whether or not relied upon by the trial court"].)

## FACTUAL AND PROCEDURAL BACKGROUND

As this is an appeal from an order sustaining defendants' demurrer, in the factual summary that follows we "accept[] as true the facts alleged in the complaint, together with facts that may be implied or inferred from those expressly alleged." (*Barnett v. Fireman's Fund Ins. Co*. (2001) 90 Cal.App.4th 500, 505.)

On or about November 22, 2006, Charles Akzam obtained a loan in the amount of $234,500 from defendant Option One Mortgage Corporation, the repayment of which was secured by a Deed of Trust recorded against real property located at 631 Steffan Street in Vallejo (hereinafter, the original loan agreement). On March 22, 2007, Charles Akzam passed away.

On or about July 1, 2009, plaintiffs, who served as administrators of Charles Akzam's estate and had assumed the loan on the subject property, entered into a loan modification agreement with defendant American Home Mortgage Servicing, Inc. (since renamed, Homeward Residential, Inc., Power Default Services, Inc.) Pursuant to this loan modification agreement, plaintiffs agreed to a schedule of modified monthly payments on the subject property.[2] Nonetheless, on or about November 30, 2009, plaintiffs permanently ceased making the scheduled payments. On the same day, plaintiffs mailed a notice of rescission to defendant American Home Mortgage Servicing, Inc., with respect to "loan number 0022583975," to wit, the original loan agreement executed by Charles Akzam.

On March 10, 2010, defendant Option One Mortgage Corporation caused to be filed a Notice of Default in the Solano County Recorders' Office.

In March 2011, plaintiff Jeffrey Akzam filed for bankruptcy protection, listing the subject loan as an unsecured debt. On September 2, 2011, a Discharge of Debtor was issued.

---

[2] According to the First Amended Complaint (FAC), plaintiff Jeffrey Akzam resides in the subject property on Steffan Street in Vallejo.

On or about January 30, 2012, the subject loan was assigned to defendant Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-2, Asset-Backed Certificates, Series 2007-2 (Wells Fargo Trust). Defendants thereafter initiated foreclosure against the subject property.

On or about April 18, 2012, plaintiffs, together with the Estate of Charles Akzam, filed this lawsuit. After defendants successfully demurred to the original complaint, plaintiffs filed the operative First Amended Complaint (FAC) on July 23, 2012, asserting claims for rescission, breach of contract, slander of title, conspiracy, negligence and declaratory relief. In the FAC, plaintiffs alleged they had timely provided notice of rescission to defendants in November 2009 after discovering defendants had failed to provide Charles Akzam "completed disclosures of his notice of right to cancel [the transaction]," as required by the Truth in Lending Act, 15 U.S.C. § 1601 et seq. (TILA), before he executed the original loan agreement. (See *Beach v. Ocwen Federal Bank* (1998) 523 U.S. 410, 411 ["Under [TILA], when a loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately. See 15 U.S.C. § 1635"]; 15 U.S.C. § 1635, subd. (f) ["An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter . . . have not been delivered to the obligor . . ."].)[3] Plaintiffs further alleged this rescission became effective when defendants failed to respond to their notice of rescission within 20 days, as required by 15 U.S.C. section 1635, subdivision (b). Finally, plaintiffs alleged that, in light of their timely rescission of the original loan agreement in November 2009, the foreclosure documents recorded by defendants with

[3] Plaintiffs contend their rescission of the original loan agreement was consummated within the applicable three-year limitation period because they sent notice of rescission to defendants on November 30, 2009, less than three years after Charles Akzam executed the loan agreement on December 6, 2006.

respect to the subject property were false or fraudulent, thereby causing them financial and physical harm.

Following a contested hearing, the trial court issued an order on December 17, 2012, sustaining defendants' demurrer to the FAC without leave to amend. In addition, the trial court granted defendants' motion to strike the Estate of Charles Akzam as a party to this lawsuit, a ruling not appealed by plaintiffs. However, after judgment was entered in favor of defendants, plaintiffs did timely appeal the order sustaining the demurrer without leave to amend.

## DISCUSSION

A trial court's decision to sustain a demurrer is a legal ruling, subject to de novo review. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) "[W]e give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded, but not the truth of contentions, deductions or conclusions of law. We reverse if the plaintiff has stated a cause of action under any legal theory. [Citation.]" (*Barnett v. Fireman's Fund Ins. Co., supra,* 90 Cal.App.4th at p. 507.)

As such, faced with plaintiffs' challenge to the order sustaining the demurrer to their FAC, we must decide whether, accepting the truth of the facts alleged therein, they can maintain an action against defendants to rescind the original loan agreement signed by Charles Akzam in 2006 based upon defendants' alleged violations of TILA. As plaintiffs acknowledge, their "first cause of action for rescission is the crux of the whole matter as [they] contend that the subject loan was rescinded and defendants committed actions thereafter which are the basis for [the] other cause [sic] of action." We conclude that plaintiffs cannot do so because they lack standing to rescind the subject agreement. The following rules dictate this result.

"Generally, '[a] litigant's standing to sue is a threshold issue to be resolved before the matter can be reached on the merits. [Citation.]' (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 1000 [24 Cal.Rptr.3d 474].) Because standing goes to the existence of a cause of action, lack of standing may be raised by demurrer or at any time in the proceeding, including at trial or in an appeal.

4

(5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 862, p. 320; *Blumhorst v. Jewish Family Services of Los Angeles, supra,* 126 Cal.App.4th at p. 1000.)  Standing requirements vary from statute to statute, and must be assessed in light of intent of the statute at issue.  (5 Witkin, *supra*, § 862, p. 320; *Blumhorst, supra*, at p. 1000.)" (*Buckland v. Threshold Enterprises, Ltd*. (2007) 155 Cal.App.4th 798, 813, disapproved on another ground in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337.  See also *Blumhorst v. Jewish Family Services of Los Angeles, supra,* 126 Cal.App.4th at p. 1000 ["We may decide a standing issue even if the trial court did not rule on the issue"].)

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."  (Code Civ. Proc., § 367.)  Thus, in determining a party's standing, the court must focus on the party's identity, and not the issues or concerns raised by the party.  (*Torres v. City of Yorba Linda* (1993) 13 Cal.App.4th 1035, 1040.)  "A person who invokes the judicial process lacks standing if he, or those whom he properly represents, 'does not have a real interest in the ultimate adjudication because [he] has neither suffered nor is about to suffer any injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented.' [Citation.]"  (*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 707; see also *Chao Fu, Inc. v. Chen* (2012) 206 Cal.App.4th 48, 57 [" 'real party in interest is one who has "an actual and substantial interest in the subject matter of the action and who would be benefited or injured by the judgment in the action" ' "].)

"Where the complaint shows the plaintiff does not possess the substantive right or standing to prosecute the action, 'it is vulnerable to a general demurrer on the ground that it fails to state a cause of action.' "  (*Schauer v. Mandarin Gems of Cal., Inc.* (2005) 125 Cal.App.4th 949, 955 [*Schauer*]; see also *Carsten v. Psychology Examining Com*. (1980) 27 Cal.3d 793, 796.)

Given that plaintiffs have brought an action for rescission, we must look to the Civil Code, section 1689, which limits the rescission remedy to the contracting parties.  (Civ. Code, § 1689, subd. (b).)  Thus, in *Schauer*, the reviewing court decided the owner

5

of a wedding ring was not entitled to rescind the sales contract on the ring that was entered into by her former husband given the lack of a valid assignment of his contractual rights to her: "Civil Code 1689 limits its grant of rescission rights to the contracting parties. . . . [The plaintiff/ring owner], not having participated in the agreement, not having undertaken any duty or given any consideration, is a stranger to the agreement, with no legitimate interest in voiding it." (*Schauer, supra,* 125 Cal.App.4th at pp. 959-960.)

Similarly, in this case, the FAC alleges that "Charles Akzam refinanced the subject property with [defendant Option One Mortgage Corporation] on December 6, 2006," and then lived in the property with superior title until his death on March 22, 2007. The FAC further alleges that plaintiffs entered into "a loan modification agreement with [defendant American Home Mortgage Servicing Inc.] in July 2009." However, it is not this agreement plaintiffs allege to have rescinded. Rather, as stated in the FAC: "On or about November 30, 2009, Plaintiffs discovered inconsistencies with the original loan documentation for loan number 0022583975, discovering only one blank notice of cancellation. [¶] [Plaintiffs] timely rescinded the loan contract within the extended right of rescission."

Applying the law set forth above to these alleged facts, plaintiffs have no standing to bring this case. Plaintiffs claim to have rescinded the original loan agreement based on defendants' failure to timely deliver to Charles Akzam proper notice of cancellation. Thus, Charles Akzam, not plaintiffs, was the real party in interest. Yet, the Estate of Charles Akzam has been dismissed as a party to this action, a ruling plaintiffs have not appealed. Rather, plaintiffs contend they have been endowed with all of the contractual rights and remedies of Charles Akzam as the administrators of his estate. According to plaintiffs, as administrators of the estate, "[i]n effect, [they] are assignees of the original note of Charles Akzam. Further, as signators [sic] to the modification transaction they have full rights to rescind under TILA as they are obligated to pay under said transaction."

6

However, plaintiffs offer no legal authority for their theory of standing, and the law is to the contrary. As the *Schauer* court aptly explained, "ownership of gifted property . . . does not automatically carry with it ownership of the rights of the person who bought the gift." (*Schauer, supra,* 125 Cal.App.4th at p. 956. See also *Millner v. Lankershim Packing Co.* (1936) 13 Cal.App.2d 315, 320 ["the mere assignment of a note and mortgage does not give to the assignee thereof the right to sue for a conversion committed, as in the instant case, some two years before the assignee obtained any right, title, or interest by way of lien in and to the cattle in question"]; *Guild Mortgage Co. v. Heller* (1987) 193 Cal.App.3d 1505, 1512 ["A suit for fraud obviously does not involve an attempt to recover on a debt or note"].)

A decision from this Appellate District is likewise instructive. In *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, Heritage Pacific Financial, LLC (Heritage), brought a fraud claim against the defendant based upon misrepresentations she purportedly made in her loan application to WMC Mortgage Corporation (WMC). The defendant had executed two promissory notes with WMC, one of which was later acquired by Heritage after a foreclosure on the senior deed of trust. In opposing a demurrer to its complaint, Heritage argued that WMC had assigned to it any and all tort claims against the defendant when Heritage acquired the note. However, as the trial court found in sustaining the demurrer, the complaint contained no allegations that WMC had assigned to Heritage the ancillary right of a tort claim, or any allegation of an assignment of a tort claim based on custom and practice in the secondary mortgage market. And nor did the mere transfer of the promissory note show an intent to assign the assignor's fraud claim. Under these circumstances, our appellate colleagues affirmed the trial court order: "We agree that the allegations in [the complaint] and the attached indorsement showed an assignment of [the plaintiff's] promissory note. However, the assignment of this contract right did not carry with it a transfer of WMC's tort rights. While no particular form of assignment is required, it is essential to the assignment of a right that the assignor manifests an intention to transfer 'the right.' [Citation.] [¶] An assignment of a right generally carries with it an assignment of other rights incident thereto. (Civ. Code,

7

§ 1084.)  The fraud claims based on [the plaintiff's] loan application with WMC are not 'incidental to' the transfer of the promissory note to Heritage.  'A suit for fraud obviously does not involve an attempt to recover on a debt or note.' [Citation.]"  (*Heritage Pacific Financial, LLC v. Monroy, supra,* 215 Cal.App.4th at pp. 990-991 [*Heritage Pacific Financial*].)

This reasoning resonates here.  Simply put, like tort rights arising from borrower misrepresentations on a loan application in *Heritage Pacific Financial*, TILA rights arising from lender disclosures to Charles Akzam upon execution of the original loan agreement are not, as a matter of law, incidental to the transfer of the underlying promissory note.  (See *Heritage Pacific Financial, supra,* 215 Cal.App.4th at p. 991 ["conveyance of the promissory note to Heritage does not establish that WMC assigned to Heritage its right to the performance of other, distinct obligations owed by Monroy, such as the obligation to provide truthful information"].  See also *Sunburst Bank v. Executive Life Ins. Co*. (1994) 24 Cal.App.4th 1156, 1164.)  And while plaintiffs suggest these rules are relaxed under TILA, plaintiffs cite no authority for the proposition that they have standing to sue under TILA despite the undisputed fact they are not parties to the underlying agreement.  Indeed, the case law we have uncovered is to the contrary. (E.g., *Wilson v. JPMorgan Chase Bank* (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 63212, *17 ["Assuming that plaintiff's allegations are true, plaintiff has no standing to request rescission or damages under TILA because she was not a party to the loan contract and therefore is not an 'obligor' or 'consumer' with the right to rescind under TILA"]; *Johnson v. First Fed. Bank of Cal.,* Nos. C 08-01796 PVT, C 08-00264 PVT, 2008 U.S. Dist. LEXIS 111020, at *8-9 (N.D. Cal. Jul. 8, 2008) [a party not named in the loan papers is not a "consumer" under TILA and thus lacks standing to bring a TILA claim]; *Carter v. Bank of America Corp*. (E.D. Cal. 2011) 2011 U.S. Dist. LEXIS 54392, at *5 ["TILA confers a statutory ' "right of action only on a borrower in a suit against the borrower's creditor" ' "], quoting *Hernandez v. HomEq Servicing* (E.D. Cal. Dec. 6, 2010) 2010 U.S. Dist. LEXIS 128327, at *9.)  Thus, the requirement of some affirmative

indication of an assignment of ancillary rights exists under TILA, just like other legal schemes.

Moreover, the fact that plaintiffs subsequently entered into a loan modification agreement with defendants does not change our conclusion. Like before, in the absence of any allegation or indication that, under the modified agreement, defendants agreed to plaintiffs' acquisition of Charles Akzam's TILA-related rights under the original loan agreement, plaintiffs cannot validly assert such rights in court. (See *Sunburst Bank v. Executive Life Ins. Co., supra,* 24 Cal.App.4th at pp. 1164-1165 [rejecting argument raised by two banks that they were assigned the FDIC's priority rights when they assumed the assets of a failed bank, explaining: "While no particular form of assignment is required, it is essential to the assignment of a right that the assignor manifest an intention to transfer the right"].)

Indeed, the wisdom of restricting the rescission remedy to contracting parties is on full display in this case. As explained in *Schauer*, "The interest of the third party beneficiary is as the intended recipient of the *benefits* of the contract, and a direct right to those benefits, i.e., specific performance, or damages in lieu thereof, will protect the beneficiary's interests. Rescission, on the other hand, extinguishes a contract between the parties. (Civ. Code, § 1688.) Plaintiff, not having participated in the agreement, not having undertaken any duty or given any consideration, is a stranger to the agreement, with no legitimate interest in voiding it." (*Schauer, supra,* 125 Cal.App.4th at pp. 959-960.) Here, one of the contracting parties – to wit, Charles Akzam – has died. We can think of no legitimate interest possessed by plaintiffs under these circumstances in asserting any claim based on defendants' alleged noncompliance with its TILA disclosure duties to Charles Akzam at the time the original loan agreement was formed. While plaintiffs claim their review of Charles Akzam's loan documentation, after his death, "revealed" defendants' failure to make certain disclosures to him, plaintiffs do not allege any involvement whatsoever in the original loan process. As such, we conclude that, like the plaintiff in *Schauer*, plaintiffs in this case are strangers to the original loan agreement, with no legitimate interest in voiding it. (See *id*.)

9

Accordingly, based on the legal reasoning and authority set forth above, we conclude plaintiffs lack basic standing to bring this lawsuit, requiring affirmance of the trial court's decision to sustain defendants' demurrer to the FAC.[4] (*Schauer, supra,* 125 Cal.App.4th at p. 955 ["Where the complaint shows the plaintiff does not possess the substantive right or standing to prosecute the action, 'it is vulnerable to a general demurrer on the ground that it fails to state a cause of action' "].)

## II.    Sustaining The Demurrer Without Leave To Amend.

Finally, we conclude the trial court did not err by sustaining the demurrer to the FAC without leave to amend.  The applicable law is not in dispute.

Specifically, we apply the abuse of discretion standard to the trial court's decision to sustain a demurrer without leave to amend, assessing whether there is a reasonable possibility that the defect in the complaint can be cured by amendment.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Whittemore v. Owens Healthcare-Retail Pharmacy, Inc.* (2010) 185 Cal.App.4th 1194, 1199.)  "The burden of proving such

---

[4]     Plaintiffs do not challenge on appeal the trial court's findings that they failed to state valid claims with respect to their individual causes of action for slander of title, conspiracy, or negligence.  As such, the trial court's findings as to these causes stand. Moreover, plaintiffs' remaining two causes of action, breach of contract and declaratory relief, are inextricably intertwined with their rescission cause of action.  As such, these causes fail for the same reason – to wit, plaintiffs' lack of standing.  In particular, the breach of contract claim hinges on plaintiffs' assertion that they were excused from performing on the modified loan agreement once they validly rescinded the original loan agreement.  Thus, our conclusion that plaintiffs did not — and could not — effectively rescind the original loan agreement executed by Charles Akzam eviscerates their theory. Similarly, by the declaratory relief cause of action, plaintiffs seek a declaration of rights as to the indebted property in light of their rescission of the original loan agreement. Again, because we have concluded plaintiffs had no right to rescind the original loan agreement, any request for declaratory relief on this ground is a nonstarter.  (See *Ball v. FleetBoston Financial Corp.* (2008) 164 Cal.App.4th 794, 800 ["Where a trial court has concluded the plaintiff did not state sufficient facts to support a statutory claim and therefore sustained a demurrer as to that claim, a demurrer is also properly sustained as to a claim for declaratory relief which is 'wholly derivative' of the statutory claim"].) Accordingly, we may affirm the trial court's order without further analysis or discussion with respect to these individual causes of action.

reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "As a general rule, if there is a reasonable possibility the defect in the complaint could be cured by amendment, it is an abuse of discretion to sustain a demurrer without leave to amend." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459.) "Nevertheless, where the nature of the plaintiff's claim is clear, and under substantive law no liability exists, a court should deny leave to amend because no amendment could change the result." (*Ibid.*)

Having reviewed the relevant facts in light of these rules, we find no reasonable possibility the defects in the FAC could be cured by permitting further amendment of the pleading. Plaintiffs have identified no theory by which they could adequately state any cause of action against defendants that would not be defeated by their lack of standing, and we know of none. As explained at length above, plaintiffs were not parties to the original loan agreement, and there is no language in either that agreement or the subsequent loan modification agreement executed by plaintiffs indicating Charles Akzam intended to transfer any rights distinct from his right in the subject property to plaintiffs. As aptly explained in *Heritage Pacific Financial*, "Contract 'rights' do not exist as disembodied abstractions apart from a contract that created them. . . . [I]n California, 'the intention of the parties as expressed in the contract is the source of contractual rights and duties.' [Citation.]" (*Heritage Pacific Financial, supra,* 215 Cal.App.4th at p. 994.) Accordingly, the trial court did not abuse its discretion by sustaining the demurrer without leave to amend and dismissing this action.

## DISPOSITION

The judgment is affirmed.

_____
Jenkins, J.

We concur:

11

_____

McGuiness, P. J.

_____

Siggins, J.

*Akzam v. Sand Canyon Corp.*, A138099